FILED
JUN 3 0 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROSSI M. POTTS
14124 Bishop Claggett Court
Upper Marlboro, MD. 20772

    Plaintiff,

v.

HOWARD UNIVERSITY
2041 Georgia Avenue, N.W.
Washington, DC 20060

    Defendant,

Judge:
Civil Action Number:

CASE NUMBER 1:05CV01317
JUDGE: Ricardo M. Urbina
DECK TYPE: Antitrust
DATE STAMP: 06/30/2005

## COMPLAINT FOR REMEDIES AND RELIEF

### PARTIES

1. The Plaintiff is an individual residing at 14124 Bishop Claggett Court, Upper Marlboro, Maryland 20772. He recently was, and at all times pertinent hereto was, an employee of the Defendant, Howard University.

2. The Defendant Howard University, located at 2041 Georgia Avenue, NW, Washington, DC. 20060.

### JURISDICTION

3. This court has jurisdiction pursuant to, **Title VII of the Civil Rights Act of 1964 Civil Rights Act of 1991, Wrongful Termination, Retaliation, Breach of Contract, Fraud/Sherman Acts, Antitrust Civil Process Act, Discrimination/RICO Act.**

## Count 1, WRONGFUL TERMINATION: Under Local, Common, and Federal Law

1. Plaintiff claims for remedies and relief under local, common, and federal law.

2. Plaintiff claims that he was terminated for providing safety measures to a patient, that was in compliance with Defendant's hospital policy and JCAHO standards. If discharge of an employee undermines public policy, the injured employee has a claim that the discharge was wrong. Retaliation, short of discharge is in violation of Title VII.

3. Plaintiff claims that he was harassment coupled with threats to be discharge which, is retaliation during investigations by enforcement agencies as part of the proceedings of existing discrimination and retaliation. "Participation in proceedings" is absolutely protected and that an employer may not retaliate against an employee, even for false and malicious statements made as part of proceedings." Pettway v. American cast Iron Pipe Co. (5th Cir. 1969). Deravin v. Kerik (2d Cir. 2003). Writing a letter to the DCOHR and EEOC complaining about the agency's failure to find "reasonable cause" that also asserted employer corruption was considered a motion for reconsideration and thus protected "participation." Pettway v. American Cast Iron Pipe Co., supra (5th Cir. 1969). Participation also includes reasonable gathering of non-confidential evidence in anticipation of a formal proceeding. Grant v. Hazellett Strip-Casting Corp. (2d Cir. 1989).

"Opposition" to employer practices include, making internal complaints about the treatment being accorded unto plaintiff or other individuals, (Fine v. Ryan Intern. Airlines (7th Cir. 2002), filing grievances with labor organization. It is unlawful for an employer to "discriminate" against employees because of their participation or opposition, an obligation not qualified by "terms and conditions of employment. An action is "discriminatory" if it is likely to deter plaintiff or other employees from engaging in the protected activity by intimidation of termination, and thus could include providing negative performance evaluations or inflicting petty indignities. Cf. Lederberger v. Strangler (8th Cir. 1997)(retaliation must affect "term and condition of employment"). State non-discrimination statues proscribe sex, discrimination, the discharge of the employee on such grounds, may preclude an assertion of a common law "wrongful discharge". It violates Public Policy and/or possibly Hospital Policy/Compliance to dismiss a health care professional for refusing to violate defined and enforceable professional ethical obligations. Shearin v. The E.F. Hutton Group, Inc. (Del. 1994).

4. Constitutional and State/Common Law, defamation, intentional infliction of harm, etc.view wrongful discharge as a tort for which the employee may recover damages for foreseeable lose that include consequential injuries such as pain, suffering, emotional distress, and loss of reputation, all which Plaintiff claims as related adverse actions. Cagle v. Burns & Roe, Inc. (Wash. 1986). To punish, and thus to deter future wrongdoing, an employee may recover punitive damages for

malicious misconduct, especially for intentional violations that deprives and /or intimidate employee's of there employment rights. Some courts, however, view wrongful discharge as a contract breach, and limit damages to the "loss of bargain." (e.g., lost wages and related incidental economic loses). Punitive damages, as well as damages for non-monetary injuries such as pain, suffering, and humiliation are not generally recoverable for contract breaches. Sterling Drug, Inc. v. Oxford (Ark. 1988).

5. Plaintiff claims that his constitutional rights had been violated by the Defendant, such as, liberty infringed if an adverse action that stigmatizes the Plaintiff's reputation so that pursuit of similar employment is substantially hindered. An accusation of dishonesty or immorality infringes his liberty as well, and thus requires procedural due process. Putman v. Keller (8th Cir. 2003). Procedural Due Process "Property" and " Liberty." The Due Process Clauses of the Fifth and Fourteenth Amendments require due process of the law for governmental "takings" of Liberty and Property.

**Count 2, RETALIATION: Under Title VII**

1. Plaintiff claims that the Defendant is violation of Defamation in character, by stating that Plaintiff is playing the role of a doctor. Plaintiff's position is in disagreement and opposes the statement made by the Defendant. Plaintiff claims that the above statement imposes false characteristics and torment his physical and mental well – being.

2. Plaintiff claims that during the investigative proceedings conducted by DCOHR and EEOC, that he was granted with the approval of Dr. Brown, Bernice the Director of the Echo. Laboratory to attend a recommended course and it was declined by Dr. Williams, Deborah the acting chief of the Division Cardiology. It was indicated to me that she was uneasy with my presents as a Tech. in the Echo. Lab. employee talk for now. My objective for that year of 2001 was to focus on credentialing due to the escalating tension between me and Defendant however, I applied for annual leave and it was granted so I attended the conference scheduled for May 8, 2001 to May 11, 2001 since all expensive was pre- paid by me. On July 5, 2001 I received a letter of pre-termination for claims of insubordination which turned out to be insufficient on July 26, 2001. On July 27, 2001, I received a memorandum from Dr. Williams, Deborah indicating that I' am a major liability for Howard University Hospital in so many words. On September 24, 2001 Dr. Brown, Bernice forwarded a memorandum to the Administrator Director Mr. McKennie, Randall indicating the importance of medicare reimbursements by having either a certified laboratory or certified personnel. The choice to certify personnel was the least expensive and it was favored. On October 2, 2001 approval to attend a registry seminar arranged from October 5, 2001 to October 7, 2001, and scheduled with reimbursement upon completion of seminar. Upon completion of the seminar reimbursements would be

furnished to the participates within 30-45 days. Over 90 days passed and I continuously inquired about the reimbursement and no one to include the Administrative Directors could give a reason for the delay in reimbursement. Another one of the Administrative Directors Mr. Grant, Steven implied to me that I would not receive any thing; Mr. Grant is a good friend of Dr. Williams, Deborah as I have noticed by the many occasional visits to her office. On January 18, 2002 I filed a grievance regarding reimbursement and the original copy was to be sent to Mr. Grant, Steven. On February 7, 2002 I received a memorandum from Dr. Williams, Deborah regarding patient care issues and claims of patient abandonment. On March 7, 2002 I received a reimbursement check for $400.00 which was stated in the grievance to be made whole but it was not. So, I inquired to the Administrator Director Mr. McKennie, Randall that the reimbursement was partially paid and he implied that he was uncertain about the pay process. I notified the Tina Fox the union president and mentioned to her about what I was going through to receive reimbursement for the required seminar and the unnecessary disciplinary actions that was arisen and she stated that its possibly retaliation and to expect such activities. On April 4, 2002 I received a letter of pre-termination and on April 19, 2002 I received a letter of termination. Ironically, in <u>February</u> Dr. Williams, Deborah was emphasizing patient care issues and elaborating on acts of patient abandonment and professional handling of the patients however, the following month of <u>March</u> Dr. Williams, Deborah actions to

terminate me after I made such great efforts to provide professional patient care and safety to patients who were in need. This just goes to show that Dr. Williams, Deborah concerns are not focus on professional handling of patients but to seeking out acts of reprisal and termination as she pleases!

3. Plaintiff claims that the above actions in number (2), are known as disparate treatment they are perceived to be petty indignities use to wrongfully discharge the Plaintiff as part of the Defendant's adopted system to deprive the plaintiff of his federal protected rights.

4. Plaintiff claims that the disparate treatment altered the terms and conditions of his employment and deprived him of liberty and property.

5. Plaintiff claims that the causal connection for the above disparate treatment was Because the Plaintiff opposed of the continues unlawful activities and participated In opposition to Defendant employment practices with state and federal Enforcement agencies.

### Count 3, BREACH OF CONTRACT: Under Title 11, Local, Common, and Federal Law

1. Plaintiff claims that Defendant violated the provision of the Collective Bargaining Agreement Article XIII.

2. Plaintiff claims that Article XIII, States that, Discipline and Discharge section 1.) explains that except for cases in which employee conduct is likely to result in damage to hospital property or injury to other individuals, disciplinary measures

shall be taken in the following order: 1.) Counseling, 2.) Reprimand (must be in writing), 3.) Suspension (notice must be in writing), 4.) Termination (notice must be in writing). Plaintiff was terminated from the Defendant's premises effective, April 19, 2002 without any counseling from his immediate supervisor Dr. Bernice D. Brown, regarding termination, nor did he receive any letter of reprimand or suspension. Plaintiff was simply recommended for pre- termination without any verbal or written notification from his immediate supervisor. This sort of action to terminate Plaintiff occurred more than once in the same manner, which shall serve as a reckless pattern of employment practices.

3. Plaintiff claims that the Defendant had adopted a system to disadvantage employment rights employee's that have adverse impacts on union members.

4. Plaintiff claims adverse impacts on employee's are unlawfully reckless and malice to union members and other employee's that should work in a harmonious environment.

5. Plaintiff claims that Defendant employment practices are unlawful and disruptive To fellow employee's thus, making team work hostile and discriminatory among Men and women employee's.

6. Plaintiff claims that Defendant's unlawful influence over the corrupt labor organization causes unlawful acts of internal union affairs and/or "otherwise discriminating" in the internal operation. Intention misrepresentation in failing or

refusing to refer for employment, or classifying its members membership or applicants in a way which tend to deprive an individual union member of employment opportunities. On the surface it appears that the union is causing unlawful acts by the employer or others. The Defendant is responsible/liable for segregating the union and union members along racial and gender lines discriminating both in the internal affairs of the union. EEOC v. International Longshoremen's Ass'n (5th Cir. 1975).

**Count 4, FRAUD: Under Title 18, Sherman Act, Antitrust Civil Process Act**

1. Plaintiff claims that Defendant deliberately denied that he had valid and Proper credentials to the DCOHR and EEOC during interrogatories when investigation was being conducted by those enforcement agencies.

2. Plaintiff claims that his credentials play a key part in determining a promotion opposed to demotion.

3. Plaintiff claims that a promotion was substantial for advancement in the work force and future employment opportunities.

4. Plaintiff claims that Defendant obstructed the administration process to disadvantage the Plaintiff's protective activity and class intentionally to advantage their liability.

5. Plaintiff claims that Defendant adopted a system to disadvantage employee's Thus, having adverse impact on future or prospective employee's and union Members.

6. Plaintiff claims that Defendant should be deterred from future corruption and investigated by the Department of Justice to determine fraudulent activities.

7. Plaintiff will testify in court that Defendant is involved into white collard crimes such as, bribery, corruption, conspiracy, and other unlawful doing's like intentional contract breaching, discrimination, retaliation, antitrust violations, fraud, defraud, and perhaps other crimes.

8. Plaintiff would assist the Department of Justice and be persistent to end this kind of corruption for future generations hopefully before this adopted system reaches Defendants international relations. Plaintiff simply opposes Defendant's employment practices.

9. Plaintiff will make individual claims for both the Defendant and labor organization For the purpose of deterring the complete unlawful adoptive system.

10. Plaintiff claims that Local Union 2094, labor organization is coherently in compliance with the unlawful actions of the Defendant and he will apply the RICO Act to charge the local union independently from the Defendant because, the labor organizations are exempt from the Sherman Acts 1, 2, 3, to a certain point.

11. Plaintiff claims that the union excepts the bribery of the Defendant after all the union is liable for intentional misrepresentation. Local Union 2094 is in violation of their fiduciary duty of fair representation imposed by the National Labor Relations Act that prohibits negotiation of discriminatory contractual terms. Steel v. Louisville & N.R. Co. (S. Ct. 1944).

Although the union only breached their fiduciary duty never the less they remain to be liable for contractual conspiracy and bribery if proven.

12. Plaintiff claims that neither the union or Defendant is trust worthy to up hold the "Law of the Land", and it's obvious to the Plaintiff and hopefully it will be known to Defendant's friends, family, and other establishments.

### Count 5, DISCRIMINATION: Under Title VII and RICO ACT: Under Title 18

1. Plaintiff claims that Local Union 2094, Defendant's labor organization discriminate in the internal operations of representation of it's members by failing or refusing to refer for employment, or classifying its membership or applicants in way which tend to deprive union members of employment opportunities.

2. Plaintiff claims that union contributes to causing unlawful acts by the employer.

3. Plaintiff claims that union segregate members along gender lines that violates Title VII, discriminating in the internal affairs of the union classifying members in a way that tends to deprive them of employment opportunities, such as liberty, and property.

4. Plaintiff claims that the union is an association which exists in whole or in part to deal with Defendant concerning employee grievance, labor disputes, and terms or conditions of employment that can be trusted by Plaintiff.

5. Plaintiff claims that both the Defendant and Union conspire to practice discriminatorily in practice and overtly to disadvantage Plaintiff protected class.

5. Plaintiff understands that Title VII preserves the right to apply different terms and conditions "pursuant to a bona fide seniority system provided that such differences are not the result of an intention to discriminate between genders as in Plaintiff's case, but both the Defendant and union violated many provisions of the Collective Bargaining Agreement intentional to disadvantage the Plaintiff's protected class, activity, and other employment rights.

6. Plaintiff claims that both Defendant's and union's motive was explained and unexplained disparate treatment adopted as a system to disadvantage Union members and especially the Plaintiff's federal protected class and activities.

7. Plaintiff claims that both Defendant and union retained and concealed exculpatory Evidence that was crucial to Plaintiff's DCOHR and EEOC investigation thus, depriving him of liberty and property.

8. Plaintiff claims that it is unlawful to conspire to impose different qualifications or performance standards on men and women that's opposed of as unlawful discriminatory practice. Supra, 8.01 and 14.01.

9. Plaintiff claims that it is gender discrimination if such policies and/or provision are enforced against on gender but not against the other such as in the Plaintiff's case. Duchon v. Cajon Co. (6th Cir. 1986). Cf Plantner v. Cash & Thomas Contractors, Inc. (11th Cir. 1990).

**EQUITABLE RELIEF:**

1. Plaintiff has no adequate remedy at law.

WHEREFORE, the Plaintiff prays that this court grant him the following:

1. Plaintiff's court costs, expert witness expense, and attorney fees

2. Such other and further remedies and relief as this court deems just.

*Rossi M. Potts*

Rossi M. Potts
14124 Bishop Claggett Ct.
Upper Marlboro Maryland 20772
(301) 574-2541