Step 3 - If the Step 2 answer is not satisfactory, the Union shall submit the Grievance to the Office of the Executive Director within five (5) days of receipt of the Step 2 reply. The Executive Director or his designee shall meet with the employee and the Union Steward within five (5) days of submission of the grievance at the 2nd Step. A written reply shall be given within five (5) days of the Step 3 Meeting, with a courtesy copy to the President of Local #2094.

Step 4- If the Step 3 answer is not satisfactory to the Union it may appeal the Grievance to arbitration within seven (7) days of receipt of the Step 3 reply by notification to the Vice President, and to the American Arbitration Association for naming an arbitrator. The selection of the arbitrator and the conduct of the arbitration hearing shall be in accordance with the rules of the American Arbitration Association. The arbitrator shall conduct the hearing within twenty days (20) of the notice to the Association and shall render his award which, shall be final and binding upon the parties within thirty (30) days of the close of the hearing .

The periods of time indicated herein shall be exclusive of Saturdays, Sundays, or Holidays. The arbitrator's fee shall be shared equally by the University and the Union. Any employee found to be unjustly suspended or discharged shall be reimbursed with full compensation for all time lost and with full restoration of all rights and conditions of the employment.

Employees and Union Stewards involved in the Grievance and arbitration procedures shall do so without loss of pay. Calendar day requirements may be waived by mutual consent.

Disputes arising out of interpretation of any provision of this Agreement shall be subject to arbitration on initiation of either party.

### ARTICLE XV
### PERSONNEL FOLDERS

Section 1.
All employees covered by this Agreement and/or an authorized Union representatives will be granted free access to review the contents of an employee's personnel folder which shall be maintained in the Department of Personnel Administration. Copies of material contained therein will be provided upon request.

Section 2.
Employees shall have the right to respond to any material filed in their personnel folders and such responses shall be attached to material to which it relates.

Section 3.
All adverse material one (1) year old or older will be removed from an employee's personnel folder.

### ARTICLE XVI
### STRIKES AND LOCKOUTS

During the term of this agreement neither the Union nor any employee shall (a) engage in or in any way encourage or sanction any strike, work stoppage, slow down, or other action which shall interrupt or interfere with the normal business activity of the Employer or (b) prevent or attempt to prevent the access of employees, students or business invitees on to the Employer's

property. During the term of this Agreement, the Employer will not engage in any lockout of employees at the University or any of its facilities.

## ARTICLE XVII
## CONTRACTING OUT

During the term of this Agreement, the University shall not contract out work performed by employees covered by this Agreement except, where manpower and equipment in the University are not consistently available to perform such work. To ascertain whether manpower is available, the University will allow employees to voluntarily sign up for overtime to be worked before contracting out, where possible.

Any other direction to contract out made by the Employer would be preceded by a fourteen (14) day written notice to the Union of such intent, except in emergency situations. The Union will be notified of all such emergencies as they occur. The Union will have the opportunity to meet with the University to discuss the feasibility of such planned action and to present its counter argument.

Any employee whose job security has been jeopardized by any contracting out shall have prior right to any vacant job within the University for which the employee is qualified and the University shall ensure that this policy is carried out.

## ARTICLE XVIII
## SAFETY AND HEALTH

### Section 1. General Provisions
The University shall make reasonable provisions for the safety and health of its employees in accordance with the laws of the District of Columbia and the provisions of the Federal Occupational Safety and Health Act.

### Section 2. Health and Safety Committee
The Union shall be represented by one member and one alternate on the Hospital Safety Committee.

### Section 3.
All health and safety equipment that is deemed necessary for a particular job as indicated in the job description, shall be furnished by the University.

The University will provide adequate training on the use of proper work methods, protective measures and protective equipment to employees required to perform hazardous duties.

The University shall notify employees immediately when an unsafe or unhealthy working condition or situation of imminent danger is determined to exist. Corrective measures will be promptly initiated in accordance with OSHA procedures.

### Section 4.
No employee shall be required to use hazardous equipment for which such employee is inadequately trained. Where a dispute of hazardous conditions arises, the Hospital Safety Officer shall make a determination on the matter in question. The Hospital Safety Officer's professional ruling shall prevail until the grievance procedure is completed. However, if there is a disagreement over whether or not a hazard exists, either party may request a health hazard evaluation by the National Institute for Occupational Safety and Health.

### Section 5. Light Duty or Modified Work Assignment
The University will make every effort to provide work that honors the medical restrictions for persons who have sustained documented on the job injuries. In order to be considered for such an assignment the employee shall present a written description of these

restrictions and their duration as provided by a qualified medical/dental practitioner. At the end of thirty (30) days, the employee shall be reevaluated for further consideration of assignment, based on the written description of restrictions, as provided by a qualified medical/dental practitioner.

### Section 6. Confidential Employee Assistance Program (EAP)

(a) The Hospital provides a confidential Employee Assistance Program which is administered by the Director of the Employee Health Unit of the Hospital. The EAP is neither a job performance nor disciplinary program, but rather a program designed to motivate and assist employees in resolving medical/behavioral problems.

(b) Privacy of Records - All records and activities within the EAP are maintained in confidence by the EAP under the supervision of the Director of The Employee Health Unit.

(c) Referral - There are several types of referral, including: Self-Referral - Employees can independently seek assistance through EAP. Management Referral - An employee's supervisor should refer the employee to the EAP when the employee's job performance is negatively affected because there may be underlying medical/behavioral problems. Union Steward Referral - Union officials are encouraged to refer employees to the EAP.

(d) The Union and Management agree to meet on a regular basis to explore ways to improve the EAP.

### Section 7. Video Display Terminals

(a) Video Display Terminal (VDTs) refer to a computer terminal which displays information on a television-like screen.

(b) Howard University Hospital agrees to continue its practice of servicing and maintaining each VDT by authorized technicians at least yearly. A record of maintenance on each machine will be maintained and made available to the Union upon request.

(c) Employees whose full time assignment is to work on VDT's shall not be required to work on a VDT continuously for more than two and one-half (2.5) hours without a break. When possible, the employee and the supervisor should schedule such breaks to coincide with the fifteen (15) minute rest break and the forty-five minute lunch break.

(d) Optical Examination: Employer agrees to provide an optical examination as a part of the yearly physical examination on all unit members. Employees working directly with CRT Equipment (VDT) may schedule, through employee health, an additional examination during the year.

## ARTICLE XIX
## GENERAL PROVISIONS

### Section 1. Pledge Against Discrimination and Coercion

The provisions of this agreement shall be applied equally to all employees in the bargaining unit without discrimination as to age, sex, religion, marital status, race, color, creed, national origin, political affiliation or sexual preference.

38  39

The Union shall share equally with the Employer the responsibility for applying this provision of the agreement.

All references to employees in this Agreement designate both sexes and wherever the male gender is used it shall be construed to include male and female employees.

The Employer agrees not to interfere with the rights of employees to become members of the Union, and there shall be no discrimination, interference, restraint or coercion by the Employer or any Employer representative against any employee because of Union membership or because of any employee acting in an official capacity on behalf of the Union at mutually agreed upon periods.

The Union recognizes its responsibility as bargaining agent and agrees to represent all employees in the bargaining unit without discrimination, interference, restraint, or coercion.

### Section 2. Union Bulletin Boards

The Employer agrees to furnish and maintain a suitable bulletin board space at appropriate places to be used by the Union. Places shall be mutually determined by the Employer and the Union.

### Section 3. Union Representatives
(a) Visits

The Employer agrees that accredited representatives of the American Federation of State, County, and Municipal Employees whether local union representatives, district council representatives, or international representatives shall have full and free access to conduct Union business through established University channels.

Persons serving as duly elected officers of the Union shall be allowed reasonable time, subject to the University division head's concurrence, to conduct such internal Union business, without pay as is necessary during duty hours. Such persons shall be identified in writing to the University.

(b) Stewards

Union Stewards shall be designated by the Union and shall be recognized as employee representatives. At least one steward shall be available for the evening and night shifts. The Union will supply the Employer with lists of stewards names which shall be posted on appropriate bulletin boards. The Union shall notify the Employer of changes in the roster of stewards. Stewards are authorized to perform and discharge Union duties and responsibilities which may be assigned to them under the terms of this Agreement. Such activities should be conducted away from the work site and in the Union office when available.

Stewards shall obtain permission from their immediate supervisors prior to leaving their work assignments to properly and expeditiously carry out their Union duties. Whenever possible stewards will inform their supervisors of the amount of official time they estimate they will be using. The Union will make reasonable efforts to use stewards whose hours of work correspond to those of a grievant(s) or potential grievant(s). When contacting an employee, the Steward will first report to and obtain permission to see the employee from his/her supervisor, and such permission will be granted unless the employee cannot be immediately relieved from his assigned

duties, in which case permission will be granted as soon as possible thereafter. If the immediate supervisor is unavailable, permission will be requested from the next highest level of supervision. Requests by Stewards for permission to meet with employees and/or by employees to meet with Stewards will require a brief explanation to the supervisor of the problem involved and identification of the area to be visited. A Steward thus engaged will report back to his/her supervisor on completion of such duties and return to his/her job. The Employer agrees that there shall be no restraint, interference, coercion, or discrimination against a Steward in the performance of such duties.

Compensatory time will be granted when a Union Steward returns to the workplace during off-duty hours to conduct official union business, up to a maximum accrual balance of thirty-two (32) hours. Hours accrued in excess of the maximum balance shall be compensated at regular straight pay.

Union Stewards shall present proper identification when conducting union business.

(c) Employee Union Officials

The Union President, or in his absence, the Vice President shall be authorized to conduct labor-management business which is common to the bargaining unit without loss of pay. The President may pre-schedule no more than one (1) hour each day to conduct business in the Hospital Union Office. Such schedule shall be with the approval of the supervisor involved. Any other labor-management business which requires attendance of the Union President must have prior approval of University Officials.

(d) Union Business

Employees elected to any Union office or selected by the Union to do work which takes them from their employment with the Employer may, at the written request of the Union and the concurrence of the Employer, be granted a leave of absence, without pay. The leave of absence shall not exceed twelve (12) months.

Section 4. Uniforms

Uniforms will be prescribed by the Employer when uniforms are necessary or desirable because of the nature of the employee's duties, including his contacts with patients, or the public in an official capacity requiring his identification. The uniform will be the most economical type adequate for the purpose. Less than full uniform requirements may be applied in the following situations: temporary employees; employees temporarily assigned to positions for which uniforms are prescribed; employees appointed on an on-call basis, or when actually employed (day-to-day).

The Employer reserves the right to determine which employees will wear uniforms or protective clothing, and the right to prescribe the kind and color of uniforms or protective clothing. Employees required to wear uniforms or protective clothing which are not furnished will be given a prorated monetary allowance toward the cost of purchase and maintenance. The Employer will launder, clean, maintain and replace those uniforms it furnishes employees, except where the employer provides wash and wear smocks. In such cases, the employee is expected to maintain the cleanli-

ness of those smocks. Those uniforms lost or damaged by the laundry will be replaced at no cost to the employee. The Employer will not be responsible for cleaning, laundering or maintaining those uniforms or protective clothing for which employees receive allowances. The Employer also reserves the right to establish instructions governing the issuance, replacement and return of uniforms or protective clothing.

Allowances will be paid twice a year at six month intervals to eligible employees on the payroll. These allowances shall be paid to full-time employees even though the employees are not on the rolls during a portion of the pay period. Such allowance shall be jointly determined by the Union and the Employer.

All other full-time and part-time employees working on regularly scheduled tours of duty shall be paid that proportion of the pro-rated allowance which their regularly scheduled tour of duty bears to eighty hours.

Allowance shall not be paid to employees in a non-pay status during an entire pay period (80 hours), to employees on terminal leave, or to employees while suspended or separated unless later reinstated. Such allowance shall not exceed three hundred and fifty dollars ($350.00) per year.

Section 5. Agreement

The Employer and the Union agree to furnish each member-employee a copy of this Agreement at no cost to the employee. Costs shall be borne equally by the Employer and the Union and, printing arrangements to be mutually agreed upon.

The Employer agrees to allow presentation of Union information to new employees at University conducted orientation sessions.

The Employer shall furnish, quarterly, to the Union a list of employees entering or leaving the bargaining unit.

Section 6. Training and Career Ladder Programs

(a) The Employer and the Union recognize the need for increased cooperation in the areas of the employee training and upward mobility. Both parties subscribe to the principles of career ladders and promotion from within, consistent with other articles of this contract. Therefore, both parties agree to establish a joint employee management committee, composed of three (3) unit employees and three (3) persons selected by the Employer which shall cooperate fully in the development of training and career ladder programs.

(b) The Union and the Hospital propose the establishment of a Task Force to be composed of three representatives from each to review a jointly sponsored union management upper-mobility program that will provide for upper mobility within the bargaining unit. The Task Force may call upon the expertise of the Hospital and the Union to achieve its task.

Joint sponsorship includes support by the Hospital and the Union. The Task Force should prepare its initial report to the President of the Union and the Executive Director of the Hospital in six months.

(c) In order to provide on the job training, career advancement opportunities, and upward mobility, the parties agree that employees may participate in an upward mobility training program and, in doing so, voluntarily perform duties outside their job classification, without compensation.

In each instance, the employee and the employer through the Office of Education and Training, will first jointly develop a training plan which establishes realistic skill enhancement goals for the employee and an individualized training plan to achieve the goals. The Union will be given the opportunity to review and approve the plan.

Employees successfully completing their respective upward mobility training programs will be given priority consideration to fill vacancies for which they qualify, as a result of the training, prior to Howard University Hospital attempting to fill position from the outside.

### Section 7. Departmental Policy Manuals

The Employer agrees that there shall be no departmental policies or guidelines in conflict with the provisions of this contract and further agrees to meet and negotiate with the Union on implementation and impact of changes in personnel policies, practices and other matters affecting working conditions of bargaining unit members prior to the issuance of the policies and guidelines.

The Employer shall furnish the Union with copies of all departmental Policy Manuals.

### Section 8. New and Changed Classifications

The Employer may establish salary grades for new or changed occupational classifications and present such rates of pay to the Union. Failure to agree on the final rate shall not preclude the filing of a grievance. Any higher rate determined through the grievance procedure or arbitration shall be retroactive to the date an employee worked in the new or changed classification.

The Employee may request a desk audit of his position from the Office of Personnel Administration if his current job description does not reflect the true nature of his work.

### Section 9. Job Descriptions

The Employer shall supply an up-to-date copy of all position descriptions covering job categories in the bargaining unit to the Union within 90 days of the effective date of this contract.

### Section 10. Work out of Classification

All assignments to work out of classification will be in writing either by a written memorandum, written agreement, or an official personnel recommendation.

Individuals required to work out of classification for less than ten days will have such hours accumulated and shall be paid bi-monthly for those hours.

Individuals required to work out of classification for ten or more consecutive days shall have a personnel recommendation submitted for the payment of those hours by the tenth day of such work.

Payment for the higher classification shall be paid at the beginning step; or at a step that will yield a rate of at least $0.50 per hour above the employee's current salary. Payment will be distributed in the pay period following receipt of the approved recommendation.

### Section 11. Sexual Harassment

The University and the Union recognize that sexual harassment is a form of misconduct which undermines the integrity of employment relationships and adverse-

46    47

ly affect employment opportunities. All employees must be allowed to work in an environment free from unsolicited and unwelcome sexual overtures. Therefore, the parties mutually agree to identify and work to eliminate such occurrences.

Sexual harassment is defined as deliberate or repeated unsolicited verbal comments, gestures, or physical contact of a sexual nature which are unwelcome. Use of implicit or explicit coercive sexual behavior or control which influences or affects the career, salary, or job of an employee is sexual harassment.

## ARTICLE XX
## UNION MANAGEMENT CONFERENCES

Section 1.

The Employer and the Union agree to meet regularly, preferably bi-monthly, absent unforseen circumstances, to discuss matters of mutual concern. Such meetings shall be referred to as Labor-Management Conferences and shall not be used by either party to present or discuss grievances in any form or fashion. Problems of mutual concern, including conditions tending to cause misunderstandings, shall be considered and recommendations may be made to either the Employer or the Union or to both, by the persons present at any conference. Such meetings shall be exclusive of the grievance procedure provided for elsewhere in this Agreement and grievances shall not be considered at such meetings.

Section 2.

The Employer's representatives shall consist of the Director of Operations Support or designee and, such other full-time employees of the University as may from time to time be invited, not to exceed six in number. The Union's representation shall consist of the President and other full-time officers of the Union and/or full-time members of the Union employed by the Employer who are members of the bargaining unit covered by this Agreement provided, however, that such representation shall not exceed six in number.

Section 3.

The date, place, and hour of meetings shall be mutually agreed upon by the parties. The President of the Union shall forward to the Director of Operations Support at least seven days in advance of each conference, the names of University employees the Union has selected to participate in the conference. Such names will be provided to the Director of the Division responsible for the supervision of the employee(s) who shall make an effort to relieve the employee(s) for such time as is necessary for attending the conference without loss of pay or leave time. Where possible, the Union will be given timely notice as to the inability of any of the employees selected by it to participate due to any overriding need of their services by the Employer.

Section 4.

Representatives of the Employer and the Union shall alternate taking minutes of the conferences and assuming the responsibility for reproduction and distribution to the conferees within seven days following such conferences.

## ARTICLE XXI
## MANAGEMENT RIGHTS

**Section 1.**

(a) The Union recognizes that subject only to the express provisions of this agreement, the supervision, management, and control of the Employer's business operations and divisions are exclusively the function of the Employer.

(b) It is the intention that all of the rights, powers, prerogatives and authorities that the Employer had prior to the signing of this Agreement are retained by the Employer except those, and only to the extent that they are specifically abridged or modified by this Agreement.

**Section 2. Authority**

(a) It is recognized that the President of Howard University is the duly appointed agent of the Board of Trustees of Howard University for the purpose of carrying out all obligations at the University under this Agreement. It is further recognized that the President may delegate such of his powers as he may deem appropriate to effectuate the purpose of this Agreement.

(b) It is recognized that the President of Local Union 2094, AFSCME, AFL-CIO is the duly authorized agent of the Union for the purpose of carrying out all obligations of the Union under this Agreement. It is further recognized that the President of Local Union 2094, AFSCME, AFL-CIO, may delegate such of his power and duties as he may deem appropriate to effectuate the purpose of this Agreement.

(c) The Union shall inform the Employer from time to time, in writing, the name of the persons authorized to enter into negotiations and make decisions for the Union. The Employer shall inform the Union from time to time, in writing, the name of persons authorized to enter into negotiations and make decisions for the Employer.

## ARTICLE XXII
## TRANSFEREE'S STATUS

It is understood that Freedmen's Hospital career or career conditional employees who transferred to Howard University as of July 1, 1967 are entitled to the special provisions applicable to them stipulated in the Agreement executed by Howard University and the Department of Health, Education and Welfare, dated July 11, 1962, and in the Agreement supplementary thereto executed under date of August 3, 1967.

All former career and career conditional employees of the Hospital who as of July 1, 1967, became employees of Howard University shall retain benefit status and tenure attained by them as of the date immediately preceding and effective date of the transfer. (See Appendix A for copy of Transfer Agreement).

IN WITNESS WHEREOF, the parties hereto have set their hands this 28th day of September, 1992.

FOR THE UNION

_[signatures]_

FOR HOWARD UNIVERSITY HOSPITAL

_[signatures]_

James A. Fletcher
Vice President for Business
and Fiscal Affairs

## ARTICLE XXIII
## SAVINGS CLAUSE

In the event any Article, Section, or Portion of this Agreement should be held invalid and unenforceable by any Court of competent jurisdiction, such decision shall apply only to the specific Article, Section, or portion thereof specified in the Court's decision; and upon issuance of such a decision, the Employer and the Union agree to immediately negotiate a substitute for the invalidated Article, Section, or Portion thereof.

## ARTICLE XXIV
## MAINTENANCE OF BENEFITS

**Section 1**
(a) The employer agrees that all benefits, working conditions, and procedures affecting employees prior to the date of this Agreement shall be continued during the term of this Agreement, except, where such benefits, working conditions and procedures are altered by this Agreement, or by mutual agreement of the parties.

(b) The employer agrees that eligible employees shall be covered by the Retirement Plan as set forth in the University President's memorandum and attachments dated June 19, 1987. The terms of said plan shall be incorporated by reference into this Agreement.

(c) A part-time employee who works at least twenty (20) hours per week is eligible for appropriately pro-rated health and life insurance, leave and tuition remission in accordance with established University policy. The insurance benefits will be available on the first day of the next benefit year (open season).

(d) Eligible part-time employees may contribute up to twenty (20%) of their salary into the University sponsored Supplemental Retirement Account in accordance with established University policy.

Eligible employees covered by this Agreement shall be covered by the University sponsored Savings Plan in accordance with established University policy.

## ARTICLE XXV
## HEALTH CARE

Section 1.
(a) Initial treatment for employees who become ill or injured on the job shall be provided through the Hospital Employee Health unit or the Emergency Room at no cost to the Employee.

(b) The University shall make reasonable provisions for the Health of its employees in accordance with the laws of the District of Columbia and the provisions of Federal Occupational Safety and Health Act. These provisions cover preemployment and annual physical at no expense to the employee, including chest x-ray and other exams when necessary. Each employee must assume responsibilities for adherence to the policy on annual physical.

54

## ARTICLE XXVI
## HEALTH AND WELFARE FUND

The University agrees to provide life insurance coverage of 1-1/2 times the yearly salary of each employee.

## ARTICLE XXVII
## PERFORMANCE EVALUATION

Section 1.
It is understood that employees and supervisors will work together in developing an employee's skills, abilities and attitudes that contribute to success on the job. The supervisor will assist staff in developing their skills and abilities through training and counseling sessions, and identifying areas where improvement is needed. The Supervisor will provide written guidelines for improving deficiencies. It is further understood that success will also depend upon the employee's performance and willingness to improve deficiencies.

Section 2.
Each employee shall have an informal (verbal) performance evaluation at the halfway point in the probationary period and a written performance evaluation at the end of probation. Thereafter, each employee shall receive on his/her anniversary date, a written performance evaluation from the immediate supervisor. An employee shall receive a three (3) month notice of the due date of the evaluation.

All evaluations must be completed and reviewed with the employee within thirty (30) days after the due date in a scheduled evaluation conference. The employee shall have an opportunity to comment orally

55

and in writing on the evaluation. Each employee shall acknowledge that the evaluation has been reviewed by signing and dating the document. Each employee shall receive a copy of the evaluation.

### Section 3.

Employees cited for deficiencies and incompetence shall be given a forty-five (45) day period within which to correct any cited deficiencies. They shall receive counseling to communicate basic and positive means of correcting deficiencies and promoting professional growth. The supervisor shall discuss the employee's strengths and weaknesses with suggestions and advice for improvement. The supervisor will provide the proper training and supervision necessary to do the job correctly. Such improvement must be maintained during the next annual evaluation period.

### Section 4.

If any employee is not satisfied with his/her evaluation he/she may discuss it with the next level supervisor up through the department head and division director. The reviewer shall have the authority to change the evaluation.

Such discussions regarding the performance evaluation are not considered as filing of a formal grievance as defined in Article XIV. If an employee does decide to grieve his/her annual performance evaluation, it must be done in accordance with Article XIV.

### Section 5.

Performance Evaluations shall be removed from the employee's personnel folder every two years.

### Section 6.

Management and the Union will work together to develop and improve performance evaluation forms. Evaluation forms shall be standardized to the extent possible. Employees receiving satisfactory or above average evaluations shall be awarded appropriate recognition.

## ARTICLE XXVIII
## TERMINATION

This Agreement shall be effective as of this 28th day of September, 1992, and shall remain in in full force and effect until the 30th day of September, 1995.

It shall be automatically renewed from year to year thereafter unless either party shall notify the other in writing 90 days prior to the anniversary date that it desires to modify this Agreement. In the event that such notice is given, negotiations shall begin not later than 60 days prior to the anniversary date; this Agreement shall remain in full force and be effective during the period of negotiations or until notice of termination of this Agreement is provided to the other party in the manner set forth in the following paragraph.

In the event that either party desires to terminate this Agreement, written notice must be given to the other party not less than 10 days prior to the desired termination date which shall not be before the anniversary date set forth in the preceding paragraph.

APPENDIX A
AGREEMENT
between
HOWARD UNIVERSITY
and the
SECRETARY OF HEALTH, EDUCATION, AND WELFARE
for the
TRANSFER OF FREEDMEN'S HOSPITAL

Pursuant to Public Law 87-262 (an Act to establish a teaching hospital for Howard University and to transfer Freedmen's Hospital to the University) the Board of Trustees of Howard University and the Secretary of Health, Education, and Welfare agree as follows:

Part 1. General Purposes and Rules of Interpretation

This agreement is for the purpose of:

(A) Assisting in the provision of modern teaching hospital resources for Howard University, thereby assisting the University in the training of medical and allied personnel and in providing hospital services for the community; and

(B) Carrying out the stated intent of Congress to effect the transfer of Freedmen's Hospital to Howard University as soon as practicable, to assure the well-being of patients at Freedmen's Hospital during the period of transition, and to effect the transfer with minimum dislocation of the present hospital staff and maximum consideration of their interests as employees.

All provisions of this agreement are to be interpreted in light of these objectives

Part IV. Provisions for Hospital Personnel

A. All individuals who are career or career-conditional employees of Freedmen's Hospital on the day preceding the effective date of the transfer, except those in positions with respect to which they have been notified at least six months prior to the effective date of transfer that their positions are to be abolished, will be offered an opportunity to transfer to Howard University.

B. Howard University will not reduce the salary levels for such employees who transfer.

C. Howard University will deposit currently with respect to such employees who transfer (i.) in the civil service retirement and disability fund created by the Act of May 22, 1920, the employee deductions and agency contributions required by the Civil Service Retirement Act, and (ii) in the fund created by section 5(c) of the Federal Employee's Group Life Insurance Act of 1954 the employee deductions and agency contributions required by the Federal Employees' Group Life Insurance Act of 1954.

D. In determining the seniority rights of its employees, Howard University will credit service with Freedmen's Hospital performed by such employees who transfer, on the same basis as it would credit such service had it been performed for such University.

E. Howard University will also provide the following benefits for such employees who transfer, provided, however, that these shall be modified, as necessary, to take account of changes on or before the effective date of transfer in the benefits generally applicable to civilian employees of the United States.

58

59

1. Career status, probation and tenure. The status of individual transferees as career or career conditional employees at Howard University will be determined after the transfer on the same basis as if they had continued in Civil Service employment at Freedmen's Hospital. The University will continue for transferees for probation and tenure provisions applicable to employees of Freedmen's Hospital on the day preceding the effective date of the transfer.

2. Promotion and reassignment. The University will offer to transferees opportunities for promotion and reassignment to vacancies on the hospital staff under a promotion program in writing, designed systematically to (a) seek and select the best qualified available person for each job, (b) make selections from as wide an area of competition as practicable (c) provide employees with opportunity for growth and advancement consistent with their capacities and the needs of the University, (d) give preferential consideration to qualified employees of the hospital and fill jobs from outside only when the outside candidates is judged to be better qualified than available employees who are eligible for consideration, and (e) make selections solely on the basis of merit. The University will also extend to all transferees the opportunity to be considered for other vacancies at the University, in addition to vacancies occurring at the hospital.

60

3. Employee development. The University will provide opportunities for on-the-job and other non-Federal training equivalent to those available to employees of Freedmen's Hospital before transfer, and opportunities for participation in Federal training programs open to them as nongovernmental employees, in addition to such privileges of free tuition and educational leave as are available to other employees of the University. The Secretary will seek to enlarge opportunities for them in appropriate Federal training programs.

4. Health benefits. The University will provide benefits for transferees equivalent to those available to them under the Federal Employee's Health Benefits Program on the day preceding the effective date of transfer.

5. Reduction in force. In any reduction of force within the hospital, the retention and re-employment rights of the transferees will be determined on the same basis as if they had continued in Civil Service employment at Freedmen's Hospital, with the hospital being considered the area of competition. The University will also consider transferees for reassignment or re-employment in any position of the University where a vacancy exists for which the transferee is found to be competent.

6. Annual leave. The University will continue for transferees for the annual leave provisions applicable to them on the day preceding the effective date of transfer, counting equally (a) service credited to the transferees before the effective date of transfer for purposes of

61

determining their rate of accrual of annual leave, and (b) service at Howard University.

7. Sick leave. The University will assume the sick leave accumulated or currently accrued to the credit of the respective transferees as of the close of the day preceding the effective date of the transfer and will continue the sick leave provisions then applicable to them at Freedmen's Hospital, including (if such provisions are applicable then) the unlimited accumulation of unused sick leave and the recrediting of unused sick leave upon re-employment within three years after separation.

8. Other forms of leave. The University will continue for transferees the provisions applicable to them on the day preceding the effective date of transfer, with respect to court leave, maternity leave, military leave and furlough, leave without pay and any other forms of leave.

9. Hours of duty and compensation for overtime, night and holiday duty. The University will continue for transferees the provisions applicable to them on the day preceding the effective date of transfer, with respect to hours of duty and compensation for overtime, night, standby, and holiday duty.

10. Wage and salary administration. The University will maintain (a) classification and compensation plans equivalent to those of the Federal Government's Wage Board system and General Schedule system on the effective date of transfer, and (b) an annual survey of the classification of all transferred positions occupied by transferees.

11. Injury compensation. The University will continue for transferees the benefits applicable to them on the day preceding the effective date of transfer, with respect to compensation for injuries (including diseases) sustained in the performance of duty, including disability payments, indemnities, medical services, and death benefits.

12. Incentive awards. The University will continue for transferees the program applicable to them on the day preceding the effective date of transfer for cash awards and honor awards for suggestions, inventions, superior work accomplishments, and special acts of public service.

13. Allowances for uniforms. The University will continue for transferees the allowances for uniforms applicable to them on the day preceding the effective date of transfer.

14. Counseling services. The University will provide for transferees the counseling services equivalent to those available to them before the effective date of transfer. 15. Employment organization and employee-management relations. The University will assure to all employees of the hospital the rights and benefits generally applicable, on the effective date of transfer, to civilian employees of the United States with respect to employee organizations and employee-management relations. The University will also extend to the transferees all rights of collective bargaining,

G. In the event of uncertainty between Howard University and the Department of Health, Education, and Welfare as to the comparison of rights and benefits accorded by the University with those generally applicable, on the effective date of transfer, to civilian employees of the United States, the University and the Department will consult the United States Civil Service Commission, and, as appropriate, will inform employees of such consultation.

H. It is understood to be the intention of Howard University, although without any obligation under this agreement, to keep pace as far as practicable with future improvements in pay and other benefits made generally applicable, after the effective date of transfer, to civilian employees of the United States; and the intention of the Secretary, in accord with established policies of the Executive Branch and the Congress, to take appropriate action to assist Howard University in accomplishing this purpose.

IN WITNESS WHEREOF, the parties here to have executed this agreement as of the 11th day of July, 1962.

> Signed-Abraham Ribicoff
> Secretary of Health, Education, and Welfare
> Board of Trustees of Howard University
>
> By   Signed-James M. Nabrit, Jr.
> James M. Nabrit, Jr.
> President of Howard University
>
> Attest-Signed-G. Frederick Stanton
> Secretary of Howard University

APPENDIX B
SUPPLEMENT TO AGREEMENT
between
HOWARD UNIVERSITY
and the
SECRETARY OF HEALTH, EDUCATION, AND
WELFARE
for the
TRANSFER OF FREEDMEN'S HOSPITAL

WHEREAS, the Secretary of Health, Education, and Welfare and the Board of Trustees of Howard University executed an Agreement as of July 11, 1962 for the transfer of Freedmen's Hospital to Howard University; and

WHEREAS, the parties have agreed to effect the said transfer on July 1, 1967; and

WHEREAS, benefits applicable to civilian employees of the United States have been enacted into law subsequent to the date of the original Agreement and are not reflected in said Agreement; and

WHEREAS, the parties desire to supplement the said Agreement as hereinafter provided;

NOW THEREFORE, the Secretary of Health, Education, and Welfare and the Board of Trustees of Howard University agree to supplement the Agreement of July 11, 1962 as follows:

1. The effective date of the transfer of Freedmen's Hospital to Howard University is July 1, 1967. Part III of the Agreement is hereby superseded.

2. The following revisions are made in Part IV, Section E of the Agreement:

a. Paragraph 6 is revised to read as follows:

6. Annual leave. The University will continue for transferees the annual leave provisions applicable to them on the day preceding the effective date of transfer, counting equally (a) service credited to the transferees before the effective date of transfer for purposes of determining their rate of accrual of annual leave, and (b) service at Howard University. The University will accept for subsequent use as may be authorized by the Superintendent of the Hospital, the annual leave balance of each transferee in excess of the statutory maximum accrued by such transferee.

b. Paragraph 9 is revised to read as follows:

9. Hours of duty and compensation for overtime, night and holiday duty, work on Sunday, and irregular or intermittent duty involving unusual physical hardship or hazards. The University will continue for transferees the provisions applicable to them on the day preceding the effective date of transfer, with respect to hours of duty and compensation for overtime, night, standby, holiday duty, Sunday work, and irregular or intermittent duty involving unusual physical hardship or hazard.

c. Paragraph 18 is renumbered as 19, and a new paragraph 18 is added as follows:

18. Severance Pay. The University will provide for transferees the severance pay benefits applicable to them on the day preceding the effective date of transfer.

3. Part V, Section A of the Agreement is revised to read as follows:

A. Transfer of records. All records and files belonging to Freedmen's Hospital will be transferred to Howard University except the following which will be retained by the Government of the United States and disposed of in accordance with applicable law or regulation:

(1) Official Personnel Folder for each employee;

(2) Reduction in force record effective on or after May 1, 1966;

(3) Individual Retirement Record for each employee; SF 2806;

(4) Service Record Card for employees separated from active duty before December 31, 1947;

(5) Results of National Agency Checks;

(6) Confidential Statements of Employment and Financial Interest, Form HEW 473;

(7) Statistical reports relating to personnel;

(8) Fiscal and Accounting Records of the General Accounting Office including vouchers, general and allotment ledgers and all supporting documents;

(9) Time and Attendance Reports, Form HEW 402T, or equivalent; and

(10) Historical correspondence records of the Superintendent's Office, 1927-1950.

Upon request of the University, information form, or copies of, the retained records will be furnished free of charge to the University in lieu of the original records and files. After transfer, the University will make available to the Government of the United States any of the transferred records and files, or will furnish free of charge, information necessary for purposes of the Government of the United States for the following period of time:

(a) Clinical records of inpatients-25 years after discharge of patient or 2 years from date of transfer, whichever is later.

(b) Clinical records of outpatients-10 years after final treatment or 2 years from date of transfer, whichever is later.

(c) X-ray films of patients (other than dental x-ray)-5 years or 2 years from date of transfer, whichever is later.

(d) Pharmacy operation annual summary-5 years or 2 years from date of transfer, whichever is later.

(e) All other records-2 years from date of transfer.

Any of the records designated above for retention by the Government of the United States which are temporarily required for the conduct of business at Freedmen's Hospital will be in the legal custody of the Chief, Personnel Management Branch, Bureau of Health Service, Public Health Service personnel records, or in the custody of the Chief Fiscal Officer of the Public Health Service (fiscal and accounting records). The period of temporary use at Freedmen's Hospital shall not exceed two years from the date of transfer.

IN WITNESS WHEREOF, the parties hereto have executed this supplemental agreement as of the 3rd day of August, 1967.

> Signed-Abraham Ribicoff
> Secretary of Health, Education, and Welfare
> Board of Trustees of Howard University
>
> By    Signed-James M. Nabrit, Jr.
> James M. Nabrit, Jr.
> President of Howard University
>
> Attest-Signed-G. Frederick Stanton
> Secretary of Howard University

## Appendix C-1

1. YEAR 1991 - 1992 – RATED AS OF 10/01/91 – NON-ANNUALIZING, HUSP-SUB

| PERFORMANCE RATING | COLA | COLA | PROGRESSION POINT (ONE) | PERFORMANCE BONUS (SUB-CUM) | TOTAL OF ALL % INCREASES |
|---|---|---|---|---|---|
| | DEC. 92 | APR. 93 | | | 1.00% |

2. YEAR 1992 - 1993

| PERFORMANCE RATING | COLA | COLA | PROGRESSION POINT (ONE) | PERFORMANCE BONUS (SUB-CUM) | TOTAL OF ALL % INCREASES |
|---|---|---|---|---|---|
| EXCELLENT | 1.00% | | 2.00% | 2.00% | 5.00% |
| ABOVE AVERAGE | 1.00% | | 2.00% | 1.00% | 4.00% |
| SATISFACTORY | 1.00% | | 2.00% | 0.00% | 3.00% |

3. YEAR 1993 - 1994

| PERFORMANCE RATING | COLA | COLA | PROGRESSION POINT (ONE) | PERFORMANCE BONUS (SUB-CUM) | TOTAL OF ALL % INCREASES |
|---|---|---|---|---|---|
| | | (OCT. 93) | | | |
| EXCELLENT | | 2.00% | 2.00% | 2.00% | 6.00% |
| ABOVE AVERAGE | | 2.00% | 2.00% | 1.00% | 5.00% |
| SATISFACTORY | | 2.00% | 2.00% | 0.00% | 4.00% |

4. YEAR 1994 - 1995

| PERFORMANCE RATING | COLA | COLA | PROGRESSION POINT (ONE) | PERFORMANCE BONUS (SUB-CUM) | TOTAL OF ALL % INCREASES |
|---|---|---|---|---|---|
| | | (OCT. 94) | | | |
| EXCELLENT | | 2.00% | 2.00% | 2.00% | 6.00% |
| ABOVE AVERAGE | | 2.00% | 2.00% | 1.00% | 5.00% |
| SATISFACTORY | | 2.00% | 2.00% | 0.00% | 4.00% |

NOTE: EMPLOYEES IN A WRITING PERIOD WHO RECEIVE AN EXCELLENT OR ABOVE AVERAGE RATING WILL BE ELIGIBLE TO RECEIVE THE APPROPRIATE PERFORMANCE BONUS.

Appendix C-2

EXAMPLE: GRADE 5, SCALE A

| GRADE | CURRENT STEP | ANNUAL SALARY | | GRADE | NEW CONTRACT PROGRESSION POINT | ANNUAL SALARY |
|---|---|---|---|---|---|---|
| 5 | 1 | $15,618 | | 5 | 1 | $15,618 |
| 5 | 2 | $17,170 | | 5 | 2 | $16,340 |
| 5 | 3 | $17,427 | | 5 | 3 | $16,578 |
| 5 | 4 | $17,871 | | 5 | 4 | $17,254 |
| 5 | 5 | $19,315 | | 5 | 5 | $17,584 |
| 5 | 6 | $20,407 | | 5 | 6 | $17,930 |
| 5 | 7 | $20,419 | | 5 | 7 | $18,315 |
| 5 | 8 | $21,795 | | 5 | 8 | $18,701 |
| 5 | 9 | $22,243 | | 5 | 9 | $19,087 |
| 5 | 10 | $22,617 | | 5 | 10 | $19,501 |
| 5 | 11 | $24,486 | | 5 | 11 | $20,407 |
| 5 | 12 | $25,348 | | 5 | 12 | $20,419 |
| | | | | 5 | 13 | $21,347 |
| | | | | 5 | 14 | $22,243 |
| | | | | 5 | 15 | $23,245 |
| | | | | 5 | 16 | $24,486 |
| | | | | 5 | 17 | $25,348 |

* PROGRESSION POINTS CREATED AT MIDPOINT OF CURRENT STEPS