UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROSSI M. POTTS
14124 Bishop Claggett Court
Upper Marlboro, MD. 20772

       Plaintiff,

Judge: Ricardo M. Urbina

Civil Action Number: 1:05CV01317

v.

HOWARD UNIVERSITY
2041 Georgia Avenue, N.W.
Washington, DC 20060

       Defendant,

---

## AMENDED COMPLAINT

### PARTIES

1. The Plaintiff is an individual residing at 14124 Bishop Claggett Court, Upper Marlboro, Maryland 20772. He recently was, and at all times pertinent hereto was, an employee of the Defendant, Howard University.

2. The Defendant Howard University, located at 2041 Georgia Avenue, NW, Washington, DC. 20060.

### JURISDICTION

3. This court has jurisdiction pursuant to, **Title VII of the Civil Rights Act of 1964 Civil Rights Act of 1991, Wrongful Termination, Retaliation, Retaliation under Equal Pay Act of 1963 (EPA), Breach of Contracts, Fraud/Sherman Acts, Antitrust Civil Process Act, Discrimination/Chapter 9, RICO Act, D.C.M. R. and Codes, to include Titles: 11, 15, 18 of U.S.C.**

1

**Count 1, WRONGFUL TERMINATION: Under Washington D.C. Local, Common, and Federal Laws**

1. Plaintiff claims for remedies and relief under local, common, and federal law.

2. Plaintiff claims that he was terminated for providing safety measures to a patient, that was in compliance with Defendant's hospital policy and JCAHO standards. If discharge of an employee undermines public policy, the injured employee has a claim that the discharge was wrong. Retaliation, short of discharge is in violation of Title VII, due to participating in DCOHR and EEOC investigation. Under Title VII, the Civil Rights Act of 1991, it is also unlawful for <u>intentional</u> retaliation.

3. Plaintiff claims that he was harassed and retaliated against coupled with threats to be discharged which occurred during investigations by enforcement agencies as part of the administration proceedings of existing questionable discrimination and retaliation. "Participation in proceedings" is absolutely protected and that an employer may not retaliate against an employee, even for false and malicious statements made as part of proceedings. "Pettway v. American cast Iron Pipe Co. (5th Cir. 1969)." "Deravin v. Kerik (2d Cir. 2003)." Writing a letter to the DCOHR and EEOC, complaining about the agency's failure to find "reasonable cause" that also asserted employer corruption was considered a motion for reconsideration and thus protected "participation." Pettway v. American Cast Iron Pipe Co., supra (5th Cir. 1969).

2

Participation also includes reasonable gathering of non-confidential evidence in anticipation of a formal proceeding. Grant v. Hazellett Strip-Casting Corp. (2d Cir. 1989).

"Opposition" to employer practices include, making internal complaints about the treatment being accorded unto plaintiff or other individuals, (Fine v. Ryan Intern. Airlines (7th Cir. 2002), filing grievances with labor organization. It is unlawful for an employer to "retaliation" against employees because of their participation or opposition, an obligation not qualified by "terms and conditions of employment. An action is "retaliatory" if it is likely to deter plaintiff or other employees from engaging in the protected activity by intimidation of termination, and thus could include providing negative performance evaluations or inflicting petty indignities. Cf. Lederberger v. Strangler (8th Cir. 1997)(retaliation must affect "term and condition of employment"). State non-discrimination statues proscribe sex, discrimination, the discharge of the employee on such grounds, may preclude an assertion of a common law "wrongful discharge". It violates Public Policy and/or possibly Hospital Policy/Compliance to dismiss a health care professional for refusing to violate defined and enforceable professional ethical obligations, as in Plaintiff's case. Shearin v. The E.F. Hutton Group, Inc. (Del. 1994).

4. Constitutional and State/Common Law, defamation, intentional infliction of harm, etc. view wrongful discharge as a tort for which the employee may recover damages for foreseeable lose that include consequential injuries such as pain,

suffering, emotional distress, and loss of reputation, all which Plaintiff claims as related adverse actions. Cagle v. Burns & Roe, Inc. (Wash. 1986). To punish, and thus to deter future wrongdoing, an employee may recover punitive damages for, malicious misconduct, especially for intentional violations that deprives and /or intimidate employee's of there employment rights. Some courts, however, view wrongful discharge as a contract breach, and limit damages to the "loss of bargain:" (e.g., lost wages and related incidental economic loses). Punitive damages, as well as damages for non-monetary injuries such as pain, suffering, and humiliation are not generally recoverable for contract breaches. Sterling Drug, Inc. v. Oxford (Ark. 1988).

5. Plaintiff claims that his constitutional rights had been violated by the Defendant, such as, liberties infringed; if an adverse action that stigmatizes the Plaintiff's reputation so that pursuit of similar employment is substantially hindered, an accusation of dishonesty or immorality infringes his liberty as well, and thus requires procedural due process. Putman v. Keller (8th Cir. 2003). Procedural Due Process "Property" and " Liberty:"

## Count 2, RETALIATION: Under Title VII

1. Plaintiff claims that the Defendant is in violation of Defamation in character, by stating that Plaintiff is playing the role of a doctor. Plaintiff's position is in

disagreement and opposes the statement made by the Defendant. Plaintiff claims that the above statement imposes false characteristics and torment his physical and mental well – being, due to Defendant' s practices to discrimination, retaliation, fraud, antitrust violations, obstruction, and especially by concealing exculpatory evidence such as Plaintiff's employment application, qualifications, job description, and credentials.

2. Plaintiff claims that during the investigative proceedings conducted by DCOHR and EEOC, that he was granted with the approval of Dr. Brown, Bernice the Director of the Echocardiography Laboratory to attend a recommended course and it was declined by Dr. Williams, Deborah the acting chief of the Division of Cardiology. It was indicated to Plaintiff that she Dr. Williams, D. was uneasy with his presents as a Tech. employed in the Echo. Lab; employee talk for now. Plaintiff's objective for the year of 2001 was to focus on credentialing due to the escalating tension between him and Defendant however, Plaintiff applied for annual leave and it was granted so Plaintiff attended the conference scheduled for May 8, 2001 to May 11, 2001 since all expensive was pre- paid by Plaintiff. On July 5, 2001 Plaintiff received a letter of pre-termination for claims of insubordination which turned out to be insufficient on July 26, 2001. On July 27, 2001, Plaintiff received a memorandum from Dr. Williams, Deborah indicating that he was a major liability for Howard University Hospital in so many words.

On September 24, 2001 Dr. Brown, Bernice forwarded a memorandum to the Administrator Director Mr. McKennie, Randall indicating the importance of medicare reimbursements by having either a certified laboratory or certified personnel. The choice to certify personnel was the least expensive and it was favored. On October 2, 2001 approval to attend a registry seminar arranged from October 5, 2001 to October 7, 2001, and scheduled with reimbursement upon completion of seminar. Upon completion of the seminar reimbursements would be furnished to the participates within 30-45 days. Over 90 days passed and Plaintiff continuously inquired about the reimbursement and, no one to include the Administrative Director could give a reason for the delay in reimbursement. Another one of the Administrative Directors Mr. Grant, Steven implied to Plaintiff in front of the Administrative Director Mr. W. Randall McKinnie, that Plaintiff would not receive any thing; Mr. Grant is a good friend of Dr. Williams, Deborah, noticed by the Plaintiff from Mr. Grant, Steven visits to her office.
On January 18, 2002 Plaintiff filed a grievance regarding reimbursement and the original copy was to be sent to Mr. Grant, Steven. On February 7, 2002 I received a memorandum from Dr. Williams, Deborah regarding patient care issues and claims of patient abandonment. Around, or on March 7, 2002 Plaintiff received a reimbursement purchase order for $400.00, which was stated in the grievance to be made whole but it was not. Plaintiff inquired to the Administrator Director Mr. McKennie, Randall that the reimbursement was partially paid and he implied that he was uncertain about the pay process.

    Plaintiff notified Tina Fox the union president and mentioned to her about what he was going through to receive reimbursement for a required seminar and the unnecessary disciplinary actions that was arisen and Mrs. Fox, Tina, stated that its possibly retaliation and to expect such activities from Defendant. On April 4, 2002 Plaintiff received a letter of pre-termination and on April 19, 2002 Plaintiff received a letter of termination. Ironically, in <u>February</u> Dr. Williams, Deborah was emphasizing patient care issues and elaborating on acts of patient abandonment and professional handling of patients however, the month of <u>March</u> Dr. Williams, Deborah actions to terminate Plaintiff after he made such great efforts to provide professional patient care and safety to a patient whom was in need. Plaintiff claims that Defendant's misconduct is in conflict with public and hospitals policy/standards. This just goes to show that Dr. Williams, Deborah concerns are not focused on professional handling of patients but to seeking out acts of reprisal and termination as she pleases!, making Defendant liable for their unlawful practices.

3. Plaintiff claims that the above actions in number (2), are known as disparate treatment they are perceived to be petty indignities used to wrongfully discharge Plaintiff as part of the Defendant's adopted system to deprive the plaintiff of his federal protected rights, and employment privileges such as, public/hospital policies, etc..

4. Plaintiff claims that the continuation of disparate treatment altered the terms and conditions of his employment and deprived him of liberty and property.

5. Plaintiff claims that the causal connection for the above disparate treatment was Because, he opposed of the continues unlawful activities, and that he participated in opposition to Defendant employment practices with state and federal Enforcement agencies and/or DCOHR and EEOC.

### Count 3, BREACH OF CONTRACT: Under Title 11, Local, Common, and Federal Law

1. Plaintiff claims that Defendant violated the provision of the Collective Bargaining Agreement Article XIII.

2. Plaintiff claims that Article XIII, States that, Discipline and Discharge section 1.) explains that except for cases in which employee conduct is likely to result in damage to hospital property or injury to other individuals, disciplinary measures shall be taken in the following order: 1.) Counseling, 2.) Reprimand (must be in writing), 3.) Suspension (notice must be in writing), 4.) Termination (notice must be in writing). Plaintiff was terminated from the Defendant's premises effective, April 19, 2002 without any counseling from his immediate supervisor Dr. Bernice D. Brown, regarding termination, nor did he receive any letter of reprimand or suspension. Plaintiff was simply recommended for pre- termination without any verbal or written notification from his immediate supervisor. This sort of action to terminate Plaintiff occurred more than once in the same manner, which shall serve as a reckless pattern of employment practices, of disparate treatment.

3. Plaintiff claims that the Defendant had adopted a system to disadvantage his employment rights, which could have adverse impact on future union members.

4. Plaintiff claims that the above adverse impact on employee's are unlawfully reckless and malice to union members and other employee's that work and/or provide services to Defendant.

5. Plaintiff claims that Defendant employment practices are unlawful and disruptive to fellow employee's thus, making team work hostile and discriminatory among men and women employee's.

6. Plaintiff claims that Defendant's unlawful influence over the corrupt labor organization causes unlawful acts of internal union affairs and/or "otherwise discriminating" in the internal operation. Intention misrepresentation in failing or refusing to refer for employment, or classifying its members membership or applicants in a way which tend to deprive an individual union member of employment opportunities. On the surface it appears that the union is causing unlawful acts by the employer or others. The Defendant is responsible/liable for segregating the union and union members along gender lines discriminating both in the internal affairs of the union. EEOC v. International Longshoremen's Ass'n (5th Cir. 1975).

**Count 4, FRAUD: Under Title 18, Sherman Act, Antitrust Civil Process Act**

1. Plaintiff claims that Defendant deliberately denied that he had valid and proper credentials to work in the employment position that was provided by Defendant. Enforcement agents for DCOHR and EEOC during interrogatories, was informed by Defendant that Plaintiff only had credentials for EMT and Phlebotomy, during the investigation by those above enforcement agencies.

9

2. Plaintiff claims that his credentials played a key part in determining his role as an employee and the continuous impact of disparate treatment/petty indignities.

3. Plaintiff claims that a promotion was substantial for advancement in the work force and future employment opportunities. Plaintiff claims his credentials was key to his employment status with Defendant's establishment.

4. Plaintiff claims that Defendant obstructed the administration process to disadvantage the Plaintiff's protective activity and class intentionally to advantage their liability for future conflict concerning the Plaintiff's employment.

5. Plaintiff claims that Defendant adopted a system to disadvantage employee's thus, depriving them from complaining about adverse impacts suffered by employee's and union members by Defendant's predatory employment practices of conspiring and monopolization in both employment and market in commerce to bribery and corruption, for medical market services from employee's to advantage their marketing strategies in the territory of Washington D.C., Metropolitan area.

6. Plaintiff claims that Defendant should be deterred from future corruption and investigated by the Department of Justice to determine fraudulent activities.

7. Plaintiff will testify in court that Defendant is involved into white collard crimes such as, bribery, corruption, conspiracy, and other unlawful doing's like intentional contract breaching, discrimination, retaliation, antitrust violations, fraud, defraud, and perhaps other crimes regarding workers that provide services in commerce for money to exchange and trade in commerce, and/or with restraint to trade and

compete in commerce for services provided to medical markets such as in Plaintiff's case.

8. Plaintiff would assist the Department of Justice and be persistent to end this kind of corruption for future generations hopefully before this adopted system reaches other employers nationally and/or internationally. Plaintiff simply was totally opposed to Defendant's employment practices.

9. Plaintiff will make individual claims for both the Defendant and labor organization for the purpose of deterring the complete unlawful adoptive system.

10. Plaintiff claims that Local Union 2094, labor organization is coherently in compliance with the unlawful actions of the Defendant and he will apply the RICO Act to charge the local union independently from, the Defendant because, the labor organizations are exempt from the Sherman Acts 1, 2, and 3 to a certain point.

11. Plaintiff claims that the union excepts the bribery of the Defendant after all the union is liable for intentional misrepresentation. Local Union 2094 is in violation of their fiduciary duty of fair representation imposed by the National Labor Relations Act that prohibits negotiation of discriminatory contractual terms. Steel v. Louisville & N.R. Co. (S. Ct. 1944) and Plaintiff claims that he opposed Defendant's employment practices by filing grievances, etc., that resulted in EPA Violations, under Equal Pay Act of 1963, set by the Fair Labor Standards Act, enforced by the EEOC. Retaliation under the (EPA), Civil Rights Act of 1963, have no cap on relief! Although the union only breached their fiduciary duty never the less they remain to be liable for contractual conspiracy and bribery if proven.

11

12. Plaintiff claims that neither the union or Defendant is trust worthy to up hold the "Law of the Land", and it's obvious to the Plaintiff and hopefully it will be known to Defendant's friends, family, and other establishments.

**Count 5, DISCRIMINATION: Under Title VII and RICO ACT: Under Title 18**

1. Plaintiff claims that Local Union 2094, Defendant's labor organization discriminated in the internal operations of representation of it's members by failing or refusing to refer for employment, or classifying its membership or applicants in a way which tend to deprive union members of employment opportunities.

2. Plaintiff claims that union contributes to causing unlawful acts by the employer.

3. Plaintiff claims that union segregate members along gender lines that violates Title VII, discriminating in the internal affairs of the union, by classifying members in a way that tends to deprive them of employment opportunities, such as liberty, and property.

4. Plaintiff claims that the union is an association which exists in whole or in part to deal with Defendant concerning employee grievances, labor disputes, and terms or conditions of employment that was thought to be trusted by Plaintiff, and other employee's.

5. Plaintiff claims that both the Defendant and Union conspire to practice discriminatorily and overtly to disadvantage Plaintiff's and possibly other employee's protected class and activity, also having adverse impact on U.S. Uniformed Military Veterans.

6. Plaintiff understands that Title VII preserves the right to apply different terms and conditions "pursuant to a bona fide seniority system provided that such differences are not the result of an intention to discriminate between genders as in Plaintiff's case, but both the Defendant and union violated many provisions of the Collective Bargaining Agreement intentional to disadvantage the Plaintiff's protected class, activity, and other employment rights, by conspiring and intentionally breaching contracts of trust in trade and/or commerce towards Plaintiff, and perhaps his future employment as a worker providing medical services in the medical market.

7. Plaintiff claims that both Defendant's and union's motive was explained and unexplained disparate treatment adopted as a system to disadvantage and deceive union members and especially the Plaintiff from participating in his federally protected class and activities.

8. Plaintiff claims that both Defendant and union retained and concealed his exculpatory evidence that was crucial to Plaintiff's DCOHR and EEOC investigation thus, depriving Plaintiff from liberty, property and to compete for future employment in trade and/or commerce in the medical market.

9. Plaintiff claims that it is unlawful to conspire to impose different qualifications or performance standards on men and women that's opposed of as unlawful discriminatory practice. Supra, 8.01 and 14.01.

10. Plaintiff claims that it is gender discrimination if such policies and/or provision are enforced against on gender but not against the other such as in the Plaintiff's case.

13

Duchon v. Cajon Co. (6th Cir. 1986). Cf Plantner v. Cash & Thomas Contractors, Inc. (11th Cir. 1990).

**EQUITABLE RELIEF:**

1. Plaintiff has no adequate remedy at law.

2. Plaintiff request trial by "Grand Jury".

3. Plaintiff request for treble damages if trial is necessary.

WHEREFORE, the Plaintiff prays that this court grant him the following:

1. Plaintiff's court costs, expert witness expense, and attorney fees.

2. Such other and further remedies and relief as this court deems just.

*[signature: Rossi M. Potts]*

Rossi M. Potts
14124 Bishop Claggett Ct.
Upper Marlboro Maryland 20772
(301) 574-2541

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of August, 2005, a copy of the

Amended Complaint Civil Action Number: 1:05CV01317 is foregoing by mailed,

certified to:

        Timothy F. McCormack, Esq.
        BALLARD SPAHR ANDREWS & INGERSOLL, LLP
        300 East Lombard Street, 18th Floor
        Baltimore, Maryland 21202-3268

        From: Rossi M. Potts
        14124 Bishop Claggett Ct.
        Upper Marlboro MD. 20772

        _____
        Rossi M. Potts / Plaintiff