IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROSSI M. POTTS, | * |
| Plaintiff, | * |
| v. | *   Civil Action No.: 1:05-CV-01317 (RMU) |
| HOWARD UNIVERSITY, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF
MOTION OF HOWARD UNIVERSITY TO DISMISS AMENDED COMPLAINT**

**FACTS**

From June 25, 1994, until April 19, 2002, Plaintiff Rossi M. Potts ("Plaintiff") was employed by Howard University as an echocardiography technologist. While an employee of Howard University, Plaintiff was a member of Local 2094 of the American Federation of State, County and Municipal Employees ("Local 2094" or the "Union"). The Union and Howard University were, at all times relevant to this action, parties to a Collective Bargaining Agreement dated September 28, 1992 (the "Collective Bargaining Agreement"), a copy of which is attached as **Exhibit A**.

On April 19, 2002, after numerous warnings, Plaintiff was terminated by Howard University for continued unauthorized actions outside the boundaries of his job responsibilities. Specifically, Plaintiff had, without medical authorization or direction, placed a hospital patient on a monitoring device and then failed to monitor that patient's condition. *See* letter dated April 19, 2002, from Randall McKennie to Rossi M. Potts, a copy of which is attached as **Exhibit B**.

Despite mandatory arbitration provisions contained in the Collective Bargaining Agreement, Plaintiff did not file a grievance with the Union. He did not bring a complaint before the District of Columbia Human Rights Commission or the U.S. Equal Employment Opportunity Commission. In fact, he took no action concerning his termination until he brought this lawsuit on June 30, 2005.[1]

By the initial complaint, Plaintiff purported to assert claims for wrongful termination, retaliation in violation of Title VII of the Civil Rights Act of 1964, defamation, breach of the Collective Bargaining Agreement, violation of the Sherman Act, and violation of the Racketeer Influenced and Corrupt Organizations Act. Every count of the complaint is either barred by expiration of the applicable statute of limitations, barred by Plaintiff's failure to exhaust administrative remedies, or fails to state a claim upon which relief can be granted. Howard University moved to dismiss that Complaint on August 1, 2005. Without responding to that motion, Potts filed his Amended Complaint on August 29, 2005. The Amended Complaint, which Howard University now moves to dismiss, is materially identical to the initial Complaint.[2]

## ARGUMENT

### I. Standard Review of a Motion to Dismiss.

Even accepting all of Plaintiff's allegations as true, this Court should dismiss the amended complaint because "no relief could be granted under any set of facts that could be

---

[1] An initial lawsuit was filed on October 25, 2004. A second lawsuit was brought, making the same claims on the same facts on November 4, 2004. This suit, Potts' Third lawsuit on the same set of facts was filed on June 30, 2005.

[2] This is, in fact, the third Complaint filed in this Court that has been based on the same set of facts. (A fourth suit was filed recently in the Superior Court and will be timely removed to this Court.)

proved consistent with [Plaintiff's] allegations." *Gersman v. Group Health Ass'n*, 931 F.2d 1565, 1570 (D.C. Cir. 1991), *vacated on other grounds*, 502 U.S. 1068 (1992), *aff'd* 975 F.2d 886 (1992). The fact that Howard University has supplemented the record with documents referenced in Plaintiff's complaint or amended complaint, but not submitted with either the complaint or amended complaint, does not convert this motion from one to dismiss to one for summary judgment. *See, e.g., YWCA v. AllState Ins. Co. of Canada*, 158 F.R.D. 6, 7 (D.D.C. 1994) (accepting documentation for Motion to Dismiss because documents were referred to in plaintiff's complaint and were "central to the [plaintiff's] claim," citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2$^d$ Cir. 1991)); *see also* Fed. R. Civ. P. 10(c).

### II. Plaintiff's Claim in Count 1 for Wrongful Termination is Barred by Expiration of the Statute of Limitations.

Count 1 of the amended complaint purports to state a claim for "Wrongful Termination: Under Local, Common, and Federal Law." The count recites that Plaintiff was terminated on April 19, 2002, but fails to specifically allege any further facts to support a claim that such termination was wrongful. Plaintiff alleges only that he was in compliance with hospital policy. Complaint, Amended Complaint, Count 1, ¶ 2.

The single fact that the Plaintiff was terminated on April 19, 2002, is dispositive of Plaintiff's wrongful termination claim. Pursuant to the District of Columbia Code, the statute of limitations for an action for wrongful termination is three years. D.C. CODE ANN. § 12-301(8) (2005). Therefore, Plaintiff was obligated to bring suit on or before April 19, 2005. This action was initiated on June 30, 2005, more than two months after the expiration of the applicable statute of limitation. The claim in Count 1 for wrongful termination should be dismissed as untimely.

### III. Count 2 Fails to State a Claim of Defamation Upon Which Relief Can Be Granted and is Barred by Expiration of the Statute of Limitations.

Plaintiff's defamation action is founded on the statement allegedly made by a representative of the Defendant in the course of disciplining or terminating the Plaintiff. The Plaintiff claims that he was accused of "playing the role of a doctor."[3] Complaint, Amended Complaint, Count 2, ¶ 1. Assuming for purposes of this motion that the statement was made, it is likely privileged as a communication made without malice to a person with a legitimate interest in the Plaintiff's performance, including but not limited to an exchange of information between two Howard University employees discussing Plaintiff's performance or in the sharing of information with a prospective employer of Plaintiff. *Columbia First Bank v. Ferguson*, 665 A.2d 650, 655 (D.C. 1995).

In any event, the claim is time-barred. Under the District of Columbia Code, any action for libel or slander must be brought within one year. D.C. CODE ANN. § 12-301(4) (2005). Because the Plaintiff was terminated by Howard University on April 19, 2002 and any criticism of his job performance or suggestion that he was playing the role of a doctor would have preceded his termination, Plaintiff is well beyond the one year period in which he could have brought suit for any defamatory remarks.

### IV. Plaintiff's Title VII Claims Should Be Dismissed Because They Fail To State Claims Upon Which Relief Can Be Granted and Plaintiff Has Failed to Exhaust His Administrative Remedies.

By Counts 1 and 2, Plaintiff also claims that his termination was wrongful because it was in retaliation for Plaintiff's involvement in a protected activity under Title VII of

---

[3]  Presumably, Plaintiff is alleging that this statement was made in connection with his termination for, *inter alia*, placing patients on monitoring devices without medical authority.

the Civil Rights Act of 1964. To state a claim of retaliation, Plaintiff must establish that he was: (1) engaged in a protected activity, i.e., making a charge or participating in an investigative proceeding or hearing under Title VII; (2) that he was the subject of an adverse personnel action; and (3) there was a causal relationship between the two. *Goos v. Nat'l Ass'n of Realtors*, 715 F.Supp. 2, 3 (D.D.C. 1989). The retaliation claims must fail because Plaintiff has not alleged participation in any protected activity.

In Count 1, Plaintiff does not describe any activity beyond participation in certain undescribed "proceedings." Therefore, Plaintiff has failed to allege facts sufficient to establish that he was engaged in protected activity within the meaning of Title VII in Count 1. In Count 2, he claims to have been terminated for requesting reimbursement of educational expenses several times and eventually notifying the Union president that he had not been reimbursed. Even if that allegation were true (and the University categorically denies the claim) requesting reimbursement of educational expenses is not a protected activity under Title VII. Counts 1 and 2 fail to state claims for retaliation upon which relief can be granted and should be dismissed.

Plaintiff purports to make a third claim for violation of Title VII in Count 5. As in Counts 1 and 2, Plaintiff fails to identify the protected activity, the protected class he claims to be a member of, and fails to state what adverse employment action Howard University has taken. Count 5 fails to state a claim upon which relief can be granted and should be dismissed.

Further, even if the Plaintiff engaged in some activity protected by Title VII, any claim is time-barred and barred by Plaintiff's failure to exhaust his administrative remedies. Plaintiff had 180 days following termination to bring an administrative complaint before the EEOC or the DCHRC. 42 U.S.C. § 2000e – 5(e)(1); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). The last day on which Plaintiff could have brought such

complaint was October 16, 2002. He did not do so and any claim is now barred by his failure to exhaust or even pursue his administrative remedies. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973).

> **V.     Plaintiff's Claim in Count 3 of Breach of the Collective Bargaining Agreement is Barred by That Agreement's Mandatory Arbitration Provisions and the Labor Management Relations Act.**

By Count 3, Plaintiff claims the University breached the Collective Bargaining Agreement by terminating him. Assuming, *arguendo*, that such a claim is stated, it is precluded by the mandatory grievance provisions of that agreement and the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 14, *et seq.*, and the cases decided under the LMRA.

Section 301 of the LMRA "authorizes federal courts to fashion a body of federal law for the enforcement of … collective bargaining agreements…" *Textile Workers Union v. Lincoln Mill of Alabama*, 353 U.S. 448, 451, 1 L. Ed. 2d 972, 77 S. Ct. 912 (1957). That federal law was intended "uniformly to prevail over inconsistent local rules." *Local 174, Teamsters, Chauffers, Warehousement & Helpers v. Lucas Flour Co.*, 369 U.S. 95, 104, 7 L. Ed. 2d 593, 82 S. Ct. 571 (1962). Thus, in cases involving collective bargaining agreements, state laws purporting "to define the meaning or scope of a term in a contract suit therefore [are] pre-empted by federal labor law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1985). Similarly, when the "resolution of [a] state law claim depends upon the meaning of a collective bargaining agreement," the state law claim is pre-empted. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-406, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988).

The Plaintiff cannot avoid the application of the LMRA to this case by failing to note Section 301 of the LMRA in his complaint. The "mere omission of reference to LMRA § 301 in the Complaint does not preclude … jurisdiction" under that statute. *Fristoe v. Reynolds*

*Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980).  Federal pre-emption principles require courts to recharacterize complaints such as the Plaintiff's as arising under § 301 of the LMRA.  When the Plaintiff's complaint is considered in light of § 301 of the LMRA, Count 3 must be dismissed because the Collective Bargaining Agreement established exclusive grievance and arbitration procedures for aggrieved employees.  The Plaintiff never establishes that he participated in a grievance process, much less that he has exhausted his administrative remedies.  Further, Plaintiff has not and cannot allege that his case comes from within one of the limited exceptions to the exhaustion requirement.

Federal labor law requires a strict enforcement of exclusive grievance procedures and arbitration clauses in collective bargaining agreements.  *See Lee Washington, Inc. v. Washington Motor Truck Transp. Employees Health & Welfare Trust*, 310 A.2d 604, 605-606 (D.C. 1973).  The Supreme Court has held that such arbitration provisions in a collective bargaining agreement should be specifically enforced.  *Textile Workers*, 353 U.S. at 451.  The duty to enforce arbitration clauses is one of the basic tenants of federal labor law.  *See, e.g., Vaca v. Sipes*, 386 U.S. 171, 184, 17 L. Ed. 2d 842, 87 S. Ct. 903 (1967); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 13 L. Ed. 2d 580, 85 S. Ct. 614 (1964); *Elkes v. B'nai B'rith Int'l*, 540 F. Supp. 98, 99 (D.D.C. 1982); *Lee Washington*, 310 A.2d at 605.  When a collective bargaining agreement establishes exclusive grievance and arbitration procedures and an employee resorts to the courts before the grievance procedures have been fully utilized, "the employer may defend on the ground that the employee has not exhausted exclusive remedies available under the contract."  *Jordan v. Washington Metro Transit Auth.*, 548 A.2d 792, 796 (D.C. 1988) (citation omitted).

The exceptions to the exhaustion requirement are limited and inapplicable here. An employee need not exhaust his remedies only where the employer's conduct "amounts to repudiation of those contractual [grievance] procedures," *Vaca v. Sipes*, 386 at 185, or where the union has the sole power under the contract to invoke the higher stages of the grievance procedure and prevents the employee/plaintiff from exhausting his contractual remedies by a "*wrongful* refusal to process the grievance." *Id.* (emphasis in original). The union's conduct, however, must be arbitrary, discriminatory, or in bad faith to amount to a breach of its duty of fair representation. "[A] union does not breach its duty of fair representation … merely because it settled the grievance short of arbitration." *Id.* at 192.

The Collective Bargaining Agreement between the University and the Union in force at all times relevant to this action established exclusive grievance and arbitration procedures for aggrieved employees. *See Carmena v. Brown-Eagle Corp.*, 722 F. Supp. 264, 266 (M.D. La. 1989) (interpreting similar language in an agreement to constitute an "exclusive and final remedy"). Plaintiff does not allege that he exhausted his administrative remedies under that Agreement or that he falls within the one of the limited exceptions of the exhaustion requirement. Plaintiff does not and cannot allege that the University's conduct amounted to repudiation of the contractual grievance or arbitration procedures or that the Union breached its duty of fair representation to the Plaintiff. *Vaca v. Sipes*, 386 U.S. at 185-90. That failure to plead is fatal to Plaintiff's common law claims for breach of the agreement. *Cf. Elkes v. B'nai B'rith Int'l*, 540 F. Supp. at 98.

### VI. Count 4 Fails to State a Claim Under the Sherman Act Upon Which Relief Can Be Granted.

The Sherman Act, 15 U.S.C. § 1, *et seq*. provides that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce

among several states, or with foreign nations, is declared to be illegal." In Count 4 of the Amended Complaint, Plaintiff purports to allege Sherman Act violations. Plaintiff, however, has failed to suggest how any of the facts he has alleged within this count have anything to do with any restraint on trade or commerce, let alone interstate commerce. Plaintiff has plead none of the elements of a cause of action, provided no supporting facts for any cause of action, and merely strung together a series of unsupported, false, defamatory statements about the University and the Union with an irrelevant statutory citation. Count 4 should be dismissed.

### VII. Count 5 of Plaintiff's Complaint Entitled "Discrimination" Fails to State a Claim Under RICO.

Similarly, in Count 5, Plaintiff cites the Racketeer Influenced and Corrupt Organizations Act ("RICO"), but wholly fails to state a claim upon which relief can be granted. Each of the first three subsections of Section 1962 of Title 18 make actionable various forms of activity, all based on a relationship with an enterprise and "a pattern of racketeering activity." *See* 18 U.S.C. § 1962(a)-(c). The last subsection, subsection (d), makes it a crime to conspire to engage in any of the activities delineated in subsections (a)-(c). Each offense under § 1962 requires, as an element, "a pattern of racketeering activity." At no point in Count 5 does Plaintiff describe any facts that would amount to a pattern of racketeering activity that would give rise to a cause of action under RICO. In fact, the great majority of the paragraphs within Count 5 address Plaintiff's issues and complaints regarding the Union and have nothing to do with the Defendant. As Plaintiff has provided no set of facts under which RICO liability could possibly lie, Count 5 must be dismissed.

### CONCLUSION

For the foregoing reasons, the Motion of Howard University to Dismiss should be granted and the Amended Complaint and all counts thereof should be dismissed.

Respectfully submitted,

_____/s/_____
Timothy F. McCormack
Bar No. 385025
Jennifer E. Keyser

Ballard Spahr Andrews & Ingersoll, LLP
18th Floor
300 East Lombard Street
Baltimore, Maryland 21202
Telephone: (410) 528-5600
Facsimile: (410) 528-5650

Attorney for Defendant Howard University


Respectfully submitted,

_____/s/_____
Timothy F. McCormack
Bar No. 385025
Jennifer E. Keyser

Ballard Spahr Andrews & Ingersoll, LLP
18th Floor
300 East Lombard Street
Baltimore, Maryland 21202
Telephone: (410) 528-5600
Facsimile: (410) 528-5650

Attorney for Defendant Howard University

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of September, 2005, a copy of the foregoing was mailed, first-class, postage prepaid, to:

>Rossi M. Potts
>14124 Bishop Claggett Court
>Upper Marlboro, Maryland 20772

>/s/
>Timothy F. McCormack